F I L E D
Clerk
District Court
JUL 15 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| REYNALDO A. MANILA,<br><br>                Plaintiff,<br><br>    v.<br><br>ROBERTO GUERRERO, *et al.*,<br><br>                Defendants. | Case No. 1:18-CV-00003<br><br>**DECISION AND ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

## I.    INTRODUCTION

Before the Court is a Motion to Dismiss Plaintiff's Third Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6), filed by all remaining defendants: Robert Guerrero, Jose K. Pangelinan, and Georgia M. Cabrera (June 6, 2019, ECF No. 48). The Court ordered Defendants Guerrero and Pangelinan to file a supplemental brief addressing the effect, if any, of 7 C.M.C. (N. Mar. I. Code) § 2506 on their statute of limitations defense (Order, June 13, 2019, ECF No. 49), and they did so (Supplemental Briefing, June 21, 2019, ECF No. 51). Pro Se Plaintiff Reynaldo A. Manila filed an Opposition (June 26, 2019, ECF No. 52), to which Defendants filed a Reply (July 3, 2019, ECF No. 53). The motion came on for a hearing on July 11, 2019, after which the Court took it under advisement. Having carefully considered the briefs and the oral arguments of the parties, the Court now DENIES the Motion to Dismiss, for the reasons stated herein.

## II. DISCUSSION

Manila, an inmate in the Department of Corrections ("DOC") of the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI"), accuses Defendants of deliberate indifference to his serious medical needs, in violation of 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution: (1) for delay in arranging surgery to repair a detached retina in his left eye (claim against Guerrero and Pangelinan) and (2) for delay in approving surgery to remove a cataract from the same eye (claim against Cabrera). The parties are familiar with the details of the allegations, which are set forth in a previous decision and order (May 10, 2019, ECF No. 45). The Court will recount them in this discussion only as necessary to explain its reasoning.

As always with pro se pleadings, the Court will construe Manila's Third Amended Complaint liberally. See *Resnick v. Hayes,* 213 F.3d 443, 447 (9th Cir. 2000). On a motion to dismiss, all well-pleaded factual allegations, taken as true, "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

**1. Statute of Limitations on the Retinal Detachment Claim (Guerrero and Pangelinan)**

Defendants Guerrero and Pangelinan assert that the Third Amended Complaint ("TAC") fails because it is obvious that the two-year statute of limitations has run on Manila's section 1983 claim for injury from delay in retinal surgery. (Defendants' Memorandum in Support, ECF No. 48-1. at 3.) *See* 7 C.M.C. § 2503(d) (two-year limitations period for tort claims); *Pangelinan v. Wiseman,* Civil No. 08-0004, 2008 WL 11389559, at * 4 (D. N. Mar. I. May 8, 2008) (CNMI's two-year statute of limitations applies in section 1983 actions). In a motion to dismiss, a defendant

may raise an affirmative defense like the statute of limitations when it is "obvious on the face of the complaint." *Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 902 (9th Cir. 2013).

Guerrero and Pangelinan maintain that this claim accrued sometime in December 2015. (Mem. 5.) On December 17, 2015, Dr. Mark Robertson, an optometrist, examined Manila and reported to DOC officials that the detachment "has progressed to the point where much more vision loss will be permanent." (DOC Consultation Report, ECF No. 47-1, at 7.) Manila was aware of this prognosis no later than December 24, 2015, when he met in DOC with attorney Steven Pixley and told Pixley "that he has a serious medical issue involving his left eye (retinal detachment)" and that "[u]nless he receives immediate medical treatment he will become permanently blind in his left eye." (Letter, Pixley to Pangelinan, Dec. 29, 2015, ECF No. 47-1, at 8.) Defendants assert that "[b]ased on Plaintiff's own timeline, he knew of permanent injury as early as December 17, 2015. His complaint was filed on January 2, 2018.[1] Accordingly, he has facially exceeded the statute of limitations on his retinal detachment claim against Defendants Guerrero and Pangelinan." (Mem. 4.)

The Court asked Defendants to brief whether 7 C.M.C. § 2506 has tolled the statute of limitations on Plaintiff's claim because he was incarcerated when the claim accrued and he is still in prison. (Order, June 13, 2019, ECF No. 49.) Section 2506 states: "If the person entitled to a cause of action is a minor or is insane or is imprisoned when the cause of action first accrues, the action may be commenced within the time limits in this chapter after the disability is removed."

---

[1] This is the date when the Clerk acknowledged receipt of a one-page letter from Manila to the Chief Judge complaining of delays in medical treatment in DOC. (*See* ECF No. 2-2.) The letter is dated "December 06, '16," but from the contents, which refer to later events, it is clear the year was 2017. A prisoner's section 1983 action is deemed filed when he or she hands it in to prison officials for mailing. *Douglas v. Noelle,* 567 F.3d 1103, 1107 (9th Cir. 2009) (adopting the "mailbox rule"). Therefore, the actual filing date may be as early as December 6, 2017. However, as will become apparent, it is not necessary to determine the exact date in order to decide this motion.

3

Defendants assert two bases to reject the application of section 2506. They contend that section 2506 does not apply because Manila has not affirmatively pleaded "that he is entitled to tolling by virtue of disability caused by uninterrupted imprisonment" (Supp. Br. 3) and, in the alternative, that the federal district court should abstain, under the Pullman doctrine, or certify a question to the Commonwealth Supreme Court because the scope of section 2506 with respect to prisoners has not been determined by the CNMI courts (*id.* 5–6).

In his Opposition, Manila asserts that he did not discover he was permanently losing vision in his left eye until Dr. Robertson told him so on May 1, 2018 (TAC 23), and hence this action accrued on that date and is timely (Opp. 4). He does not address whether 7 C.M.C. § 2506 tolls the limitations period. Manila signed his Opposition on June 26. (Opp. 5.) The Court's order of supplemental briefing issued and was mailed to DOC on June 13; defense counsel affirms that on June 21, a copy of Defendants' Supplemental Brief was hand-carried to DOC. (Supp. Br. 7.) It seems likely, then, that Manila was aware of this issue when he was writing his Opposition but failed to address it. Defendants assert that Manila has effectively conceded this point. (Reply 2.) Defendants easily rebut Manila's discovery-of-harm argument by observing that it is impossible for the cause of action to have accrued *after* the claim was filed in earlier in 2018. (Reply 3.)

A. Analysis

Manila's failure to dispute Defendants' interpretation of 7 C.M.C. § 2506 does not mean that the Court must adopt it. "A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred." *California Sansome Co. v. U.S. Gypsum,* 55 F.3d 1402, 1406 (9th Cir. 1995). The Court must hold Defendants to their burden and examine whether the disability exception applies.

Defendants' first argument, that Manila has not sufficiently pled that he is entitled to tolling

4

under the section 2506 disability exception, rests on a misreading of *New Shintani Corporation v. Quitugua,* 2011 MP 9, 2011 WL 2971941 (N. Mar. I. 2011). In *New Shintani,* the Commonwealth Supreme Court held that "a party is required to *plead facts* establishing an exception to the statute of limitations when the face of the complaint shows that the cause of action is time-barred." 2011 MP 9 ¶ 1 (emphasis added). Defendants' misapprehension that the plaintiff must plead the exception itself could be based on two summaries of the *New Shintani* parties' arguments, which framed the issue as whether plaintiff had "failed to affirmatively plead an exception to the statute of limitations …" 2011 MP 9 ¶ 4; *see also* ¶ 14 ("Shintani argues that even if it was required to plead an exception …."). When the Commonwealth Supreme Court speaks directly on the question, however, it is always careful to say *plead facts:* "The central issue in this appeal is whether a plaintiff is required to plead facts establishing an exception to the statute of limitations" (¶ 8); "Accordingly, the question arises whether Shintani was required to affirmatively plead facts establishing an exception" (¶ 9); "Courts in other jurisdictions are divided concerning whether a plaintiff must plead facts establishing an exception" (¶ 11); "Requiring attorneys to affirmatively plead facts establishing an exception to the statute of limitations makes practical sense." (¶ 13). The court's final announcement of its holding is crystal clear on this point: "For the foregoing reasons, we hold that the trial court erred because a party is required to plead facts establishing an exception to the statute of limitations when the face of the complaint shows that the cause of action is time-barred." (¶ 16). Therefore, under *New Shintani,* Manila continues to benefit from tolling so long as he has pleaded facts showing that he was under the legal disability of imprisonment when the claim accrued and that the disability has not been lifted.

At the motion hearing, defense counsel asserted that the disability was lifted for the period in January–March 2016 when Manila was in Guam for retinal surgery and not housed in the CNMI

5

1  prison. He called attention to case law finding that Texas's disability exception did not toll the
2  statute of limitations for an escapee, or for a person on probation or released on bail. *See Glover*
3  *v. Johnson,* 831 F.2d 99, 101 (5th Cir. 1987) (reviewing Texas case law). This argument would
4  have merit if the pleadings showed that Manila was released from custody to travel to Guam for
5  the surgery, but they don't. The natural inference from the facts pled is that Manila remained in
6  custody during the off-island medical referral. "On January 29, 2016 … I *was brought* to Guam
7  with only a copy of my expired Phil[ippine] passport." (TAC 13 (emphasis added).) From Manila's
8  narrative, it appears that much of the delay in treatment was because for several weeks authorities
9  tried unsuccessfully to arrange his release from Commonwealth custody – by having his sentence
10 commuted or by having him deported – so that his medical treatment would not be their
11 responsibility. (TAC 5–9.) In their motion, Defendants acknowledge that Manila remained in
12 custody while in Guam: they justify the delay in treatment as the unavoidable consequence of
13 complex logistics to, among other things, "transport Plaintiff, and to house the Plaintiff, an inmate,
14 in another jurisdiction[.]" (Mem. 5.)

15 On the face of the Third Amended Complaint it appears that Manila has been in CNMI
16 custody continuously from the initial diagnosis of retinal detachment until the present day. Most
17 of the documents that Manila has attached to his pleading and that he refers to therein are inmate
18 request forms, DOC medical consultation reports, and letters from doctors to DOC officials. In his
19 exhibits, he attached a copy of an Order Releasing Passport, issued by the Commonwealth Superior
20 Court on December 7, 2015, which states that Manila "is currently serving a 60-year sentence at
21 the Department of Corrections." (ECF 47-1, at 6.) For these reasons, the Court finds that Manila
22 has pleaded sufficient facts to plausibly establish the tolling exception for disability so as to
23 overcome a motion to dismiss on statute of limitations grounds.
24

6

Defendants' second argument, that the federal district court should decline to exercise jurisdiction and abstain from adjudicating this dispute, is likewise unpersuasive. It is based on the fallacious premise that 7 C.M.C. § 2506 is ambiguous as to whether imprisonment is a per se disability or is only a disability if plaintiff can show that it hindered his access to the courts. (Supp. Br. 4.) They maintain that the text of section 2506 "begs the question, what is really a disability, imprisonment itself or access to civil remedies which may have been hindered by imprisonment at the time?" (*Id.*)

Try as Defendants do to create one, there is no ambiguity in the text. It clearly makes minority, insanity, and imprisonment per se disabilities within the meaning of the statute. Other jurisdictions with similar statutes have understood them to make imprisonment a per se disability. For example, Massachusetts had an almost identical disability exception, and it was understood to make imprisonment a per se disability. *See Francis v. Lyman,* 108 F. Supp. 884, 885 (D. Mass. 1952) (tolling statute of limitations on civil rights claim until plaintiff was released from prison); *Gonsalves v. Flynn,* 981 F.2d 45, 46–47 (1st Cir. 1992) (recognizing that in 1987 the Massachusetts legislature amended its disability exception statute by "deleting imprisonment as a disabling condition that would prevent the limitations period from running"). A Washington State statute that tolled actions accruing while a person was "imprisoned on a criminal charge" until "such disability" be removed was found to mean "actual, uninterrupted incarceration is the touchstone for determining disability by incarceration." *Bianchi v. Bellingham Police Dept.,* 909 F.2d 1316, 1318 (9th Cir. 1990).

Defendants' argument that an access test should be read into the statute might have been viable thirty years ago, but not today. Before 1989, some courts found that the disability exception did not toll the statute of limitations for prisoners' federal civil rights claims under 42 U.S.C. §

7

1983, because the Civil Rights Act of 1964 was designed as "a vehicle for prisoners to raise assertions of deprivations of constitutional rights . . . during their imprisonment." *Perotti v. Carty,* 647 F. Supp. 39, 40 (S.D. Ohio 1986). But in 1989, the Supreme Court rejected this carve-out for section 1983 actions. In *Hardin v. Straub,* it considered whether access to the courts restricted application of Michigan's disability exception. The Michigan statute read: "[I]f the person first entitled to make an entry or bring an action is under 18 years of age, insane, or imprisoned at the time the claim accrues, the person … shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run." *Hardin v. Straub,* 490 U.S. 536, 540 (1989) (quoting Mich. Comp. Laws Ann. § 600.5851(1) (1987)). The Supreme Court held that the Michigan statute tolled the running of the limitations period on section 1983 suits while a person is incarcerated, regardless of whether the prisoner had access to the courts:

> As the Sixth Circuit pointed out, … many prisoners are willing and able to file § 1983 suits while in custody. Thus, a State reasonably could decide that there is no need to enact a tolling statute applicable to such suits. Alternatively, a State reasonably might conclude that some inmates may be loathe [*sic*] to bring suit against adversaries to whose daily supervision and control they remain subject, or that inmates who do file may not have a fair opportunity to establish the validity of their allegations while they are confined. The Michigan tolling statute reflects a legislative decision to lessen any such difficulties by extending the time in which prisoners may seek recovery for constitutional injuries. Such a statute is consistent with § 1983's remedial purpose.

*Id.* at 544.

*Hardin* spelled the end of cramped application of broadly worded disability exceptions. Indeed, one week after it issued *Hardin,* the Supreme Court granted a certiorari petition in *Perotti v. Carty,* vacated the judgment of the Sixth Circuit, which had affirmed the Southern District of Ohio's decision (see above), and remanded for further consideration in light of *Hardin.* 109 S.Ct.

8

2425 (May 30, 1989).

State legislatures may amend their disability exception to exclude imprisonment, as have Massachusetts (see *Gonsalves,* above) and Texas. *See Benavides v. Torres,* Appeal No. 04-93-00753-CV, 1996 WL 591929, at *2 (Tex. App. Oct. 16, 1996) (not designated for publication) (observing that in 1987 Texas amended its statute to remove imprisonment as a legal disability). Or they may insert a clause expressly conditioning the disability on lack of access to the courts, as Kansas has done. *See Kan. Stat. Ann.* § 60-515 ("Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability."). But the Commonwealth legislature has not chosen to do so.

Defendants correctly observe that the Commonwealth Supreme Court has not directly considered the scope of the section 2506 disability exception. In the one case that mentions it, *Zhang v. Commonwealth,* the court accepted without analysis appellant's concession that the tolling of her claim against an immigration officer for sexual assault ended when she was released from detention. 2001 MP 18 ¶ 13. While *Zhang* may not be controlling precedent on the meaning of section 2506, it indicates that the court was untroubled by appellant's concession. The court's own restatement of the exception treats imprisonment as a disability per se: "A person with *certain disabilities,* i.e., insanity, minority age, and *imprisonment,* may file within the statutory limits after the disability is removed. *See* 7 C.M.C. § 2506." 2001 MP 18 ¶ 12 n.8 (emphasis added). This aligns with the trial court's analysis of the statute and its determination that the limitations period was tolled until Zhang was released from incarceration. *Zhang v. CNMI,* Civil Action No. 99-163, at 3–4 (N. Mar. I. Super. Ct. Sept. 30, 1999).

Defendants urge the Court to abstain and defer to the CNMI courts, or to certify a question

9

to the Commonwealth Supreme Court. Pullman abstention (announced in *Railroad Commission v. Pullman Co.,* 312 U.S. 496 (1941)) is warranted when "difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236 (1984). Abstention is the exception, not the rule; it is not enough that there may be a "bare, though unlikely, possibility" that state courts would so interpret a statute as to render adjudication of the federal question unnecessary. *Id.* at 237. Where a statute is "not of an uncertain nature and ha[s] no reasonable limiting construction … Pullman abstention is unnecessary." *Id.* The likelihood that CNMI courts would so limit section 2506 as to run the clock on Manila's claim is too remote to warrant abstention.

Certification of a question to the Commonwealth Supreme Court also is unwarranted. Certification is "manifestly inappropriate … in a case where … there is no uncertain question of state law whose resolution might affect the pending federal claim." *City of Houston, Tex. v. Hill,* 482 U.S. 451, 471 (1987). A question should not be certified if the statute "is neither ambiguous nor obviously susceptible of a limiting construction. A federal court may not properly ask a state court if it would care in effect to rewrite a statute." *Id.* Were this Court to certify a question, it would effectively be inviting the Commonwealth Supreme Court to rewrite section 2506 by inserting an access clause.

For these reasons, this Court will neither abstain from exercising jurisdiction nor certify a question to the Commonwealth Supreme Court.

**2. "Substantial Harm" and the Cataract Claim (Cabrera)**

Manila claims that Defendant Cabrera harmed him by being instrumental in delaying his cataract surgery for more than a year after diagnosis, from late July 2016 to early September 2017. (TAC at 14–19.) Cabrera asserts that the delay in treatment cannot support an Eighth Amendment

10

claim because Manila has not pled that the delay caused him "substantial harm." (Mem. 9.) "Following the surgery, Plaintiff plea[ds] no facts related to it and explicitly provides that the cause of his ultimate harm is retinal detachment," not cataracts. (*Id.*) "There is simply no plausible factual connection in Plaintiff's complaint that links a delay in cataract surgery with retinal detachment." (*Id.*)

The Court has already denied one Rule 12(b)(6) motion by Cabrera, challenging the Second Amended Complaint for failure to state a claim due to delay in cataract surgery. *Manila v. Guerrero,* 2019 WL 2064713 (May 10, 2019). The Court found that cataracts in one eye can be a serious medical need, and that Cabrera's statement that it was not serious because it was not life-threatening "may in itself show deliberate indifference if it indicates a blanket DOC policy against cataract surgery." *Id.* at \*6 (citing *Colwell v. Bannister,* 763 F.3d 1060, 1063 (9th Cir. 2014)). That ruling does not prevent Cabrera from bringing the same or a similar motion in response to the Third Amended Complaint, which renders all prior pleadings a nullity. *Sidebotham v. Robinson,* 216 F.2d 816, 823 (9th Cir. 1954). But it does raise the question: What reason does Cabrera give for the Court to reach a different conclusion on the Third Amended Complaint?

The answer lies in Cabrera's citation to this Court's decision in *Camacho v. CNMI Department of Corrections,* No. 18-cv-00008, 2019 WL 392376, \*6 (D. N. Mar. I. Jan. 31, 2019), which relied on *Wood v. Housewright* (9th Cir. 1990) for the proposition that delay in treatment cannot give rise to an Eighth Amendment claim absent a showing of "substantial harm." (Mem. 9.) In *Wood,* when plaintiff was admitted to Nevada State Prison he was wearing a sling to immobilize one arm, as prescribed by a physician to allow a shoulder injury to heal after surgery. 900 F.2d 1332, 1333. A prison guard confiscated the sling, and a few days later a pin in plaintiff's arm broke and caused him pain. *Id.* Almost two months passed before Wood was taken to an

11

orthopedic specialist, who removed the pin. *Id.* at 1334. Plaintiff brought a civil rights suit against the director of the Department of Prisons and the warden of the Nevada State Prison. *Id.* at 1333. The district court ruled in defendants' favor, and a split panel of the Ninth Circuit affirmed. *Id.* In his opinion for the court, Judge Farris wrote: "Nor does the delay in treatment that Wood suffered constitute an eighth amendment violation; the delay must have caused substantial harm." *Id.* at 1335.

As to the need to show that the harm was substantial, however, Judge Farris did not speak for the majority of the panel. Judge Hug concurred in affirming the district court, but on other grounds. He expressly differed with Judge Farris's analysis of the Eighth Amendment claim. "I conclude that the confiscation of the sling and the long and unjustified delay in treatment to remove the broken pin did amount to deliberate indifference as discussed in Judge Reinhardt's dissent." *Wood,* 900 F.2d at 1336 (Hug, J., concurring). Judge Reinhardt clearly stated that "the panel majority" agreed that Wood stated a claim for deliberate medical indifference. *Id.* (Reinhardt, J., dissenting in part). The Ninth Circuit confirmed that conclusion in *McGuckin v. Smith:* "In *Wood,* one member of the panel suggested that only delays in medical treatment that cause 'substantial harm' violate a defendant's constitutional rights. Two members of the panel explicitly rejected that suggestion. ... [T]hat is the rule of our circuit …" 974 F.2d 1050, 1060 n.12 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds by WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). *McGuckin* states the complete rule: although "mere delay of surgery," without more, does not make out a claim for deliberate medical indifference, "a finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary." *Id.* at 1060. This Court recognized the correct rule in a subsequent decision in the same *Camacho* case, which is handled by the same defense counsel as in this case but was not acknowledged in the Motion to

Dismiss. *See Camacho v. CNMI Dep't of Corrections,* No. 18-cv-00008, Screening Order Dismissing Second Amended Complaint (Apr. 16, 2019, ECF No. 50).

Nevertheless, the "substantial harm" test refused to die. For the first few years after *McGuckin* issued, panels routinely issued unpublished dispositions that perpetuated it. *See Jackson v. Lewis,* 992 F.2d 1219 (9th Cir. 1993) (table); *Walker v. City of L.A.,* 21 F.3d 1119 (9th Cir. 1994) (table). Even one published per curiam decision made this error: *Berry v. Bunnell,* 39 F.3d 1056 (9th Cir. 1994) (citing *Wood* on substantial harm and not citing *McGuckin* at all). Occasionally, the court followed the correct standard: in *Cummings v. Lewis,* an unpublished disposition, it observed that the *Wood* panel did not approve the "substantial harm" test and that *McGuckin* rejected it "in favor of a mere 'harm' test[.]" 108 F.3d 337 (table), 1997 WL 66492, at *3 (9th Cir. 1997). But the discredited "substantial harm" standard continued to be applied: *see Sewell v. California Dep't of Corrections,* 176 F.3d 484 (9th Cir. 1999) (table) (affirming summary judgment for department of corrections and relying on *Wood*'s "substantial harm" test); *Grandberry v. Pickett,* 232 F.3d 894, n.3 (9th Cir. 2000) (citing to *Wood* in finding that appellant "has not submitted evidence to establish that the defendants' alleged delay resulted in substantial harm").[2]

In 2006, the Ninth Circuit clarified the test for prisoner claims arising from delay in medical treatment: "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner

---

[2] It bears noting that one magistrate judge picked up that Judge Farris's opinion in *Wood* was not controlling on the issue of substantial harm, and that the rule was stated in Judge Reinhardt's dissent. *Mizques v. Hoover,* No. CV 04-76, 2006 WL 2506049, at *6 (D. Mont. Aug. 28, 2006).

1  [it] ordinarily militates against a finding of deliberate indifference.'" *Jett v. Penner,* 439 F.3d 1091,

2  1096 (9th Cir. 2006) (quoting *McGuckin,* 974 F.2d at 1060).[3] *Jett* also spells out the full Eighth

3  Amendment test for deliberate indifference:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent or negligent failure to provide adequate medical care alone does not state a claim under § 1983.

*Id.* (citations omitted and internal punctuation cleaned up).

As this Court observed in its decision on the motion to dismiss the Second Amended Complaint, cataracts can be a serious medical condition, satisfying the first prong, and Manila has pleaded purposeful acts by Cabrera and failure by her to respond. The unjustified and lengthy delay in cataract surgery supports the allegation of indifference. The remaining question is whether the Third Amended Complaint alleges sufficient facts to support an inference that indifference caused harm. The Court finds that it does. In a letter dated September 19, 2016, Dr. Dennis Williams told Cabrera, "As long as the cataract is present, the vision will continue to worsen as the cataract continues to mature." Manila states that on October 16, 2016, he turned in a sick-call request

---

[3] Since *Jett,* the Ninth Circuit has reiterated that plaintiff need not show the harm was substantial. *See Wilhelm v. Rotman,* 680 F.3d 1113, 1122 (9th Cir. 2012). Yet district courts throughout the circuit still frequently rely on *Wood* and require plaintiffs to show substantial harm. For example: *Woodward v. Wang,* No. 1:16-cv-01089, 2019 WL 316817, at *8 (E.D. Cal. Jan. 24, 2019); *Donohue v. Vargo,* No. 2:16-cv-00788, 2018 WL 3964804, at *4 (D. Or. Aug. 17, 2018); *Merrick v. Ryan,* No. CV-15-000684, 2016 WL 4059137, at *4 (D. Ariz. July 8, 2016); and as previously noted, *Camacho v. CNMI Dep't of Corrections,* No. 18-cv-00008, 2019 WL 392376, at *6 (D. N. Mar. I. Jan. 31, 2019). Often in these cases the showing of harm is de minimis and insufficient to state a claim even under *Jett.*

"letting them know that my left eye vision is getting worse." (TAC at 15.) He alleges that Dr. Williams reiterated the recommendation of surgery on November 17, 2016 and again on May 17, 2017. (TAC 15–16.) Yet it took more than a year for DOC to arrange cataract surgery.

Cabrera asserts that the "ultimate harm" is from the retinal detachment, and that "there is no factual basis to show that there was any substantial harm that resulted from the delay in cataract surgery at all." (Mem. 9.) *See also* Reply 4: "No facts are alleged to make plausible an argument that *delay of* cataract surgery [Cabrera's emphasis] is even remotely related to or considered a causative factor for retinal detachment." The medical record at this stage of the litigation is far from complete, and it may ultimately show, as Cabrera suggests, that the cataract surgery was unwise and made matters worse. But that determination is for another day. Manila plausibly pleads harm from having to struggle for more than a year with worsening vision due, in some part, to a maturing cataract. That is enough to state a claim and overcome a motion to dismiss it.

Because Manila has pleaded facts showing a serious medical need for cataract surgery, more than a year's delay in the surgery due in part to intentional interference by Cabrera, and harm to his eyesight caused by the delay, he has stated an Eighth Amendment claim against Cabrera for deliberate indifference to medical needs.

### III.  CONCLUSION

The Court finds that on the face of the Third Amended Complaint, Manila's claim against Defendants Guerrero and Pangelinan is not barred by the statute of limitations. Defendants are free to re-raise their statute of limitations defense in a motion for summary judgment if they discover evidence to support it consistent with the law of the case as announced herein. Furthermore, the Court finds that the Third Amended Complaint alleges facts sufficient to state an Eighth Amendment claim against Defendant Cabrera for deliberate indifference to serious medical needs

with respect to treatment for cataract. Therefore, Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is DENIED.

Consistent with Fed. R. Civ. P. 12(a)(4), Defendants shall file and serve an answer to the Third Amended Complaint within 14 days of the date of this Decision and Order.

IT IS SO ORDERED this 15th day of July, 2019.

/s/ *signature*
RAMONA V. MANGLONA
Chief Judge