F I L E D
 Clerk
 District Court
SEP 29 2022
for the Northern Mariana Islands
By_____
             (Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| REYNALDO ATRERO MANILA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT GUERRERO, JOSE K. PANGELINAN, and GEORGIA M. CABRERA,<br><br>Defendants. | Civil Case No. 1:18-cv-00003<br><br>**DECISION & ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY** |

Before the Court is Plaintiff Reynaldo A. Manila's ("Manila") Motion to Disqualify Defendants' Counsel. (ECF No. 122.) Defendants are three Commonwealth of the Northern Marianas Islands ("Commonwealth") Department of Corrections officials all sued in their personal capacities in this 42 U.S.C. § 1983 deliberate medical indifference cause of action. Manila seeks to disqualify Defendants' attorneys on conflict-of-interest grounds based on their refusal to pursue indemnification for their clients against the Commonwealth. Manila's argument is based on his interpretation of the Commonwealth's Government Liability Act ("GLA"), codified at 7 CMC §§ 2201-2214.[1] (*See* Mot. 7-8, ECF No. 122.) Defendants' attorneys include Commonwealth Assistant Attorneys General ("AAGs") Jose P. Mafnas, Jr. and Leslie A. Healer.[2]

---

[1] In 1983, the Commonwealth passed the Government Liability Act of 1983 which repealed provisions in the Trust Territory Code and thereafter limited government liability in tort. Pub. L. No. 3-51. Then in 1986, the Commonwealth enacted the Public Employee Legal Defense and Indemnification Act of 1986 which provided further protection to government employees against the high cost of legal defense and judgments for injuries occurring within the scope of employment. Pub. L. No. 5-12. Twenty years later, PELDIA was repealed and replaced with the Commonwealth Employees' Liability Reform and Tort Compensation Act of 2006. Pub. L. No. 15-22. Based on 7 CMC § 2201(a), CELRTCA may be cited as the Government Liability Act of 1983, as amended.

[2] AAG Mafnas has been replaced by AAG Stephen T. Anson, who is now attorney of record with AAG Healer. (Anson Notice of Appearance, ECF No. 152.) However, at the time of filing of this motion, it was AAG Mafnas who argued

A hearing on the matter was held wherein the Court took the matter under advisement.[3] (Min., ECF No. 141.) Having considered the parties' briefs, oral arguments, and controlling law, the Court now DENIES Manila's motion to disqualify.

I.  PROCEDURAL BACKGROUND

This lawsuit began in February 2018 when Manila filed his pro se, in forma pauperis application and proposed complaint. (In Forma Pauperis Application, ECF No. 1.) Manila filed his Third Amended Complaint ("TAC") in February 2019, which the parties and the Court now operate from. (TAC, ECF No. 47.) After the Defendants filed their answers to the TAC, William M. Fitzgerald and Bruce L. Berline entered their appearance as counsel for Manila. (ECF Nos. 80, 89.) Manila is a state prisoner serving his sentence at the Commonwealth Department of Corrections here on Saipan. (TAC 1.) Generally, he asserts a deliberate medical indifference claim against Defendants for unreasonably delaying eye treatment and surgery in 2016 and 2017, first for retinal detachment of his left eye, then for cataracts in his right eye, all in violation of 42 U.S.C. § 1983 and the Eight Amendment of the United States Constitution. (Decision and Order Denying Mot. to Dismiss TAC 2, ECF No. 55.)

Manila originally included the Commonwealth Department of Corrections as a defendant. (*See* Order 4, ECF No. 33.) The Court later determined that the Department of Corrections could not be a party to the suit because legislation granting an express right to be sued is required, and therefore the Commonwealth would be substituted for the Department. (*Id.* at 4-5.) However,

---

on behalf of his Defendant clients. (*See* Mafnas Notice of Substitution, ECF No. 81).

[3] The Office of the Attorney General also made an appearance separate from the AAGs. (Mot. for Limited Appearance, ECF No. 114.) The Attorney General sought to intervene because "this matter concerns a general policy of the [Attorney General] and the Commonwealth[.]" (Br. 6, ECF No. 108; *see* Min., ECF No. 119 (Court converted Attorney General's notice of appearance to a motion to intervene).) In effect, the AAGs would continue to represent Defendants in their personal capacities, and the Attorney General would represent the Commonwealth in enforcing the Attorney General's interpretation of Commonwealth law. (*See generally* Br. 17-19, ECF No. 108.) However, because the Court denies Manila's motion in favor of Defendants, the Court DENIES the Attorney General's motion to intervene as MOOT.

because "the Commonwealth and any official capacity defendants are immune from suits for damages under § 1983, the claim against them must be dismissed for lack of subject matter jurisdiction." (*Id*. at 8-9.) The Court reached this conclusion based on the U.S. Supreme Court decision of *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), holding that states are not "persons" within the meaning of § 1983. (*Id*. at 8.) *See DiNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992) (finding *Fleming*'s determination that the CNMI is not a person for purposes of § 1983 unmeritorious in light of *Will* and another U.S. Supreme Court decision in *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1992), where the Court held that the Territory of Guam is not a person for § 1983 purposes). This case has since proceeded only as to Defendants sued in their personal capacities. (*Id*. at 10.)

Subsequent to the TAC, settlement conferences were held between Manila's private attorneys and the AAGs, and it was during these conferences that a conflict-of-interest issue arose. (Order 1, ECF No. 104.)

The specific conflict centers on whether, by law, the Commonwealth must indemnify government employees sued in their personal capacity in a § 1983 claim, such as the case here with Defendants. (*See id*.) Pursuant to Court order (Min., ECF No. 119), Manila submitted his formal motion to disqualify (Mot., ECF No. 122). Manila's attorneys represent that there is a viable argument that indemnification exists, and the AAGs' failure to advocate for it poses a conflict of interest and subjects the AAGs to disqualification. (*See* Mot. 7-8, ECF No. 122.) The AAGs reject these arguments and assert that indemnification for Defendants is unavailable. (*See* Guerrero Opp'n, ECF No. 124; Cabrera & Pangelinan Opp'n, ECF No. 126.)

A hearing on Manila's motion to disqualify was held, and the Court took the matter under advisement. (Min., ECF No. 141.)

//

## II.     LEGAL STANDARD

The district court has a duty and responsibility to control and supervise the conduct of attorneys practicing before it. *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996) (citation omitted). Nevertheless, state law applies to issues of attorney disqualification such that the Ninth Circuit has stated, "we must follow the reasoned view of the state supreme court when it has spoken on the issue." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) (citations omitted). "If the state supreme court has not spoken on the issue, we look to intermediate appellate courts for guidance, although we are not bound by them if we believe that the state supreme court would decide otherwise." *Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016) (citation omitted). In the Commonwealth, attorney ethics are dictated by the ABA Model Rules of Professional Conduct ("Model Rules"). *See Bisom v. Commonwealth*, 2002 MP 19 ¶ 55 (citation omitted). That said, "[d]istrict courts have discretion to disqualify conflicted counsel, but out of concern for the rights of the nonmovant to choose his own counsel, such 'motions should be subjected to particularly strict judicial scrutiny.'" *United Micronesia Dev. Ass'n., Inc. v. Wickline*, 2014 WL 12694772, at *3 (D. N. Mar. I. Dec. 5, 2014) (quoting *Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)).

## III.    DISCUSSION

The central dispute is whether indemnity by the Commonwealth is available to Defendants who are sued in their personal capacities in this § 1983 cause of action. Manila relies on the Commonwealth's Government Liability Act and this Court's decisions in *Christian I* and *II*, which interprets the GLA, to assert that a viable argument for indemnity of a § 1983 cause of action exists. *See Christian v. Commonwealth*, 2016 WL 406340 (D. N. Mar. I. Feb. 2, 2016) ("*Christian I*"); *Christian v. Commonwealth*, 2016 WL 4004574 (D. N. Mar. I. July 7, 2016) ("*Christian II*"). However, the Court finds that there is no room for interpretation that Defendants can be indemnified

for a § 1983 cause of action through the GLA. Therefore, there is no viable argument for the AAGs to pursue and no violation of the Model Rules because the AAGs are not expected to pursue frivolous arguments. *See* Model Rule 3.1 (meritorious claims and contentions). Manila's motion to disqualify must therefore be denied.

"This matter requires the Court to consider and construe Commonwealth statutes according to the rules of statutory construction as used by the Commonwealth Supreme Court." *Christian II*, 2016 WL 4004574, at *2 (D. N. Mar. I. July 7, 2016) (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002)). If there is no ambiguity, the statute must be given its plain meaning. *Saipan Achugao Resort Members' Ass'n v. Yoon*, 2011 MP 12 ¶ 23 (citation omitted). "When a statute is not clear, however, we look at the statute as a whole, not just an isolated set of words, to ascertain the legislature's intent . . . and likewise avoid reading a statute in a way that defies common sense or leads to absurd results." *Aurelio v. Camacho*, 2012 MP 21 ¶ 15 (citation omitted). Of course, a court's "principal responsibility in statutory construction is not judicial speculation, but to give effect to the authors' intent." *Commonwealth v. Saburo*, 2002 MP 3 ¶ 12 (citation omitted).

The GLA's purpose, like the Federal Tort Claims Act, is to protect government employees from tort liability arising out of the scope of his/her employment. *See Bisom v. Commonwealth*, 2002 MP 19 ¶ 7. It is to "provide government employees with resources to defend against lawsuits . . . as a result of the discharge of their duties as public servants" with the hopes that they will "not be driven to financial ruin because they have chosen public service[.]" *Id*. The purpose is "*not* to ensure that a wronged individual is compensated, but rather to offer protection to government employees." *Id*. (emphasis added). Here, Manila seeks the protections of the GLA for violations of his constitutional right to be free from deliberate medical indifference. The Court now turns to the specific provisions at issue.

Determining whether indemnity through the GLA exists in a § 1983 cause of action, as is argued by Manila, requires closely examining § 2208 of the GLA. Section 2208, which governs "Exclusiveness of Remedy" states:

> (a) The authority of any Commonwealth agency to sue or be sued in its own name shall not be construed to authorize suits against such agency or its employee on claims which are cognizable under this Title and the remedies provided by this Title in such cases shall be exclusive for claims against all branches of the Commonwealth government.
>
> (b) (1) The remedy against the Commonwealth provided for by this Title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Commonwealth while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages, by reason of the same subject matter, against the employee whose act or omission gave rise to the claim, or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.
>
> (2) Paragraph (1) does not extend to or apply to a civil action against an employee of the Commonwealth which:
>
>> (A) is brought for a violation of the Constitution(s) of the United States or the Commonwealth, or
>>
>> (B) is brought for a violation of a statute of the Commonwealth or the United States under which such action against an individual is otherwise authorized.

Parsing the various components of § 2208 for proper interpretation, the Court finds that "[t]he construction is relatively straightforward and unambiguous." *Christian II*, 2016 WL 4004574, at *3. First, § 2208(a) clearly defines the GLA as the exclusive means "for claims against all branches of the Commonwealth government"; in other words, the Commonwealth limits its waiver of sovereign immunity to tort actions under the GLA. Next, § 2208(b)(1) provides that the GLA is the exclusive remedy against the Commonwealth for the tortious acts of Commonwealth employees acting within the scope of their employment. *See Christian II*, 2016 WL 4004574 at *3 ("In other words, suits against Commonwealth employees must be brought under the [GLA], and

if a lawsuit should have been brought against the Commonwealth because the employee was acting within the scope of his official duties, then the employee must be substituted upon the AG's certification." (citing 7 CMC § 2210(a))).[4] Other actions "arising out of or relating to the same subject matter against the employee . . . [are] *precluded*" no matter when the tortious act occurred. 7 CMC § 2208(b)(1) (emphasis added). Finally, § 2208(b)(2) delineates two exceptions to allow for civil actions against government employees pursuant to a violation, either under the United States or Commonwealth Constitution, *id*. at § 2208(b)(2)(A), or where there is a separate federal or local statute authorizing a suit, *id*. at § 2208(b)(2)(B). *Christian II* confirms this last interpretation and iterates that substitution of the Commonwealth in pursuit of circumstances arising under (b)(2) is improper. *Christian II*, 2016 WL 4004574 at *3 (finding substitution improper for statutory private right of action under Commonwealth statutes).

      This Court analyzed § 2208(b)(2) in *Christian II* and found that "constitutional claims and claims based on a statute that creates a private cause of action are not precluded by the [GLA]." *Christian II*, 2016 WL 4004574 at *3. In other words, § 2208(b)(2) gives recourse to plaintiffs filing suit against government employees for a private right of action based on an alleged statutory violation pursuant to the GLA exception. For suits arising from this GLA exception, substitution of the Commonwealth is "improper" and "must be denied regardless of whether [the individual defendants] were acting in an official capacity." *See id*. (statutory cause of action). This finding was echoed in *Norita v. Commonwealth*, 2019 WL 150875, at *3 (D. N. Mar. I. Jan. 10, 2019), where the Court indicated that the protections of the GLA "do not extend to constitutional and statutory private rights of action," and therefore the Commonwealth rightfully refused substitution.

---

[4] 7 CMC § 2210(a) states:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his/her office or employment at the time of the incident out of which the claim arose, any civil action . . . shall be deemed an action against the Commonwealth and the Commonwealth shall be substituted as the party defendant, if the Commonwealth was not already a defendant in the suit.

Thus, Manila's interpretation of *Christian II* is misplaced. (*See* Mot. 8 (citation omitted) ("[T]his Court noted in *Christian* [*II*] that the legislature's not imposing any limitation on the available relief pursuant to 7 CMC § 2208(b)(2) indicates the legislative intent not to restrict the basis for relief in a § 1983 action. This can encompass a claim for or entitlement to indemnification.").) *Christian II* did not submit that plaintiffs can acquire GLA remedies pursuant to the GLA exception; rather, if there exists an alternative constitutional or statutory private right of action, plaintiffs may pursue remedies against the government employee under those provisions.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating *federal rights* elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (emphasis added) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A plaintiff alleging a § 1983 claim must first "identify the specific *constitutional* right allegedly infringed." *Id.* (emphasis added) (citations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Here, Manila is not asserting a tortious claim pursuant to the GLA but instead a § 1983 cause of action for Defendants' violation of his Eighth Amendment right against deliberate medical indifference. (*See* Decision and Order Denying Mot. to Dismiss TAC 15 (concluding that Manila's TAC "alleges facts sufficient to state an Eighth Amendment claim").) As such, Manila's lawsuit properly falls under § 2208(b)(2)(A), the GLA constitutional exception. Therefore, Manila's suit is not one that can be remedied through the GLA based on the Court's interpretation of § 2208 and its *Christian* decisions.

Manila's additional reliance on *Christian I* for his argument that the Commonwealth can and does indemnify individual government employee defendants is also erroneous. There, the Court addressed whether a stay on discovery as to the Commonwealth defendant and the individual

government employee defendants should be granted based on a pending appeal. The Court determined that a stay would be appropriate as to the Commonwealth pending a Ninth Circuit decision on the availability of the Commonwealth's sovereign immunity. However, because the individual employee defendants were sued in their individual capacity, they could not "shelter behind [the Commonwealth's] aegis of sovereign immunity" even if the Commonwealth would indemnify them. *Christian I*, 2016 WL 406340 at *2.

Manila relies on this last statement to argue that because the Commonwealth sought to indemnify the defendants in that case, that the Commonwealth should pursue indemnity in this case as well. The AAGs, in opposition, respond that "[i]t is not clear under what scheme the Commonwealth argued it would indemnify the personal capacity defendants, but it appears that the argument was that under the GLA the Commonwealth would be substituted for the individual capacity defendants, providing *de facto* indemnity." (Opp'n 9, ECF No. 125 (citing *Christian II*, 2016 WL 400455574).) Defendants' understanding is correct; the Government sought to substitute itself in for the individual defendants in the *Christian* cases pursuant to the GLA. In so doing, the Government would then seek to indemnify the individual defendants. The Commonwealth's attempt at indemnifying the individual defendants ultimately failed, *see Christian II*, 20216 WL 4004574 at *3 (substitution improper for private rights of action), thereby establishing that the Commonwealth cannot substitute itself in for claims made against its employees pursuant to the GLA exception under § 2208(b)(2). Therefore, Manila's reliance on *Christian I* on the availability of indemnification beyond the confines of the GLA fails.

Manila further argues that indemnification must be available based on another provision in the GLA, namely 7 CMC § 2205: "[T]he legislature has authorized the Commonwealth to settle any claim against a government official or employee, which includes a §1983 claim alleged against

an official or employee in their personal capacity." (Mot. 8 (citing *Christian II*, 2016 WL 4004574, at *4).) That provision reads:

> The Attorney General may compromise or settle any claim *asserted hereunder*, whether asserted by initial claim, civil action, or otherwise. Money judgment rendered against the Commonwealth shall only be paid from funds specifically appropriate for that purpose by the legislature.

7 CMC § 2205(a) (emphasis added). Plainly, § 2205's reference to the settlement of any claims relates to claims "asserted hereunder." Thus, only GLA claims may be settled by the Attorney General pursuant to this statute. The GLA provides a Commonwealth remedy for those who have been tortiously affected by individual government employees acting within the scope of their employment. Nothing suggests that the Attorney General's settlement authority under the GLA is a remedy afforded for a statutory or constitutional allegation, like a § 1983 civil rights violation cause of action.

### IV. CONCLUSION

The GLA is limited to tort liability arising out of conduct by government employees acting within the scope of their employment; it does *not* contemplate indemnification for other statutory or constitutional violations. To the extent any plaintiff seeks remedies against government employees for suits arising out of § 2208(b)(2)'s exceptions, unless otherwise guaranteed by some other Commonwealth law, any damages must come from the individual employee—not the Commonwealth. To achieve a different result requires legislative action, not a decision by the courts.

Therefore, nothing in the GLA requires or permits remedies against the Commonwealth for a plaintiff in a § 1983 lawsuit. Section 2208(b)(2) allows plaintiffs to pursue constitutional or statutory suits and remedies against government employees beyond the confines of the GLA; suits arising out of this GLA exception do not permit the Commonwealth to substitute itself in for individual defendants, thereby precluding any claim for indemnity through the GLA. Any

arguments on the alleged conflict-of-interest or waiver are therefore mooted. Furthermore, § 2205(a)'s settlement authority is limited to suits under the GLA. Thus, the AAGs do not have a duty to pursue arguments in which there is no statutory basis and doing so may subject them to other liability under the Model Rules for bringing frivolous arguments. *See* Model Rule 3.1 ("A lawyer shall not . . . assert an issue . . . unless there is a basis in law and fact for doing so that is not frivolous[.]").

Accordingly, the Court DENIES Manila's motion to disqualify (ECF No. 122), and the Attorney General's motion to intervene (ECF No. 114) is DENIED as MOOT.

IT IS SO ORDERED this 29th day of September, 2022.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge